**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| KENNETH S., JR.,<br><br>           Plaintiff,<br><br>      v.<br><br>MARTIN O'MALLEY,<br>Commissioner of the Social Security<br>Administration,<br><br>           Defendant. | Case No. 2:23-cv-22119 (BRM)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Plaintiff Kenneth Smith, Jr.'s ("Plaintiff") appeal of the final decision of the Commissioner of the Social Security Administration ("Commissioner"[1]) denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 1381–83, and for Disability Insurance Benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 402–34. (ECF Nos. 1, 9.) The Commissioner filed an Opposition. (ECF No. 15.) As of the date of this Opinion, Plaintiff has not filed a Reply, which was due on August 5, 2024, pursuant to the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). Having reviewed the submissions filed in connection with this appeal and having declined to hold oral

---

[1] Leland Dudek became Acting Commissioner of the Social Security Administration ("SSA") on February 19, 2025. Therefore, pursuant to Federal Rule of Civil Procedure 25(d), Mr. Dudek is substituted as Defendant (previously, Martin O'Malley) in this suit. *See also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

argument in accordance with Local Civil Rule 78.1(b), for the reasons set forth below and for good cause shown, the Plaintiff's appeal is **DENIED** (ECF No. 1) and the Commissioner's decision is **AFFIRMED**.

## I.    BACKGROUND

### A.    Procedural History

This case arises out of Plaintiff's challenge to the Commissioner's denial of his application for SSI and DIB. (*See* ECF No. 1.) On October 19, 2020, Plaintiff applied for SSI and DIB, alleging disability beginning January 1, 2017, initially based on a back condition, neuropathy, and traumatic brain injury.[2] (*See* ECF No. 3 (Transcript of Proceedings[3] ("Tr.")) at 294, 298, 317.) The SSA denied Plaintiff's claims on May 25, 2021 (Tr. 234–38), and again upon reconsideration on October 22, 2021. (*Id*. 242–49.)

Plaintiff then filed, through counsel, a written request for a hearing (*id.* at 251–52), and on March 22, 2022, Administrative Law Judge Sharon Allard ("ALJ Allard") held a hearing regarding Plaintiff's claim (*id.* at 36–73). In a decision dated September 26, 2022, ALJ Allard found Plaintiff not disabled within the meaning of the Act. (*Id.* at 15–28.)  ALJ Allard considered the entire record in making her decision. (*Id.* at 18.) The Appeals Council denied Plaintiff's request for review on September 12, 2023, and ALJ Allard's decision became the final decision of the Commissioner. (*Id.* at 1–7.) Having exhausted his administrative remedies, Plaintiff filed his appeal with this Court, seeking review of ALJ Allard's decision.

---

[2] In his initial application, Plaintiff alleged disability beginning July 7, 2013, but at the March 22, 2022 hearing he amended the alleged onset date of disability to January 1, 2017. (Tr. at 15.)

[3] The administrative record is set forth in this transcript. (*See generally* ECF No. 5.)

### B.    Factual Background

As an initial matter, ALJ Allard determined Plaintiff met the SSA's insured status requirements through December 31, 2018. (Tr. at 18.) At the time of ALJ Allard's decision, Plaintiff was a forty-four-year-old male, who completed his high school education through tenth grade. (*Id.* at 27, 318.) At step one, ALJ Allard found Plaintiff had not engaged in substantial gainful activity since January 1, 2017, which was the amended alleged onset date of Plaintiff's claimed disabilities. (*Id.* at 18.) Plaintiff had most recently been employed full-time as a custodian in 2011 and previously as an unskilled laborer, claiming he continued working until 2013 when the pain became too unbearable. (*Id.* at 22, 27, 124.) At step two, ALJ Allard found Plaintiff had the following "severe medical impairments": "depressive disorder, anxiety disorder, post-traumatic stress disorder, personality disorder, sleep apnea, obesity, osteoarthritis, and hypertension." (*Id.* at 18.) At step three, ALJ Allard did not find Plaintiff had "an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." (*Id.* at 19.) At step four, ALJ Allard found Plaintiff had the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he is limited to standing or walking four hours in an eight hour workday. He can occasionally climb ramps and stairs, occasionally balance on wet moving or uneven surfaces, occasionally kneel, stoop, and crouch, and never crawl or climb ladders, ropes or scaffolds. He can have occasional exposure to temperature extremes of heat and cold, wetness, humidity, fumes, odors, dusts, gases and poor ventilation. He can understand and execute simple and routine tasks. He can have occasional contact with coworkers, supervisors, and the public, but not with tasks that involve direct customer service. He can make simple decisions and adapt to occasional changes in essential work tasks.

(*Id.* at 22.) Finally, at step five, ALJ Allard found, based on "Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (*Id.* at 27.) Specifically, ALJ Allard found Plaintiff could perform "unskilled, light" work in "sedentary occupations" such as "table worker (DOT # 739.687-182[]) . . . document preparer (DOT # 249.587-018[]) . . . and ticket counter (DOT # 219.587-010 . . .)," among other jobs based in part on the testimony of the vocational expert. (*Id.* at 27–28.)

## II.  STANDARD OF REVIEW

On a review of a final decision of the Commissioner, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions regarding questions of fact are deemed conclusive by a reviewing court if supported by "substantial evidence" in the record. 42 U.S.C. § 405(g); *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). A district court must affirm an administrative law judge's ("ALJ") decision if it is supported by substantial evidence. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *Newhouse v. Heckler*, 753 F.2d 283, 285 (3d Cir. 1985) (citations omitted). Substantial evidence "is more than a mere scintilla of evidence but may be less than a preponderance." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 545 (3d Cir. 2003). The Supreme Court reaffirmed this understanding of the substantial evidence standard in *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). To determine whether an ALJ's decision is supported by substantial evidence, a court must

review the evidence in its totality. *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984). "Courts are not permitted to re-weigh the evidence or impose their own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). Accordingly, a court may not set an ALJ's "decision aside if it is supported by substantial evidence, even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

## III.  THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

Under the Act, the SSA is authorized to pay SSI and DIB to "disabled" persons. 42 U.S.C. § 1382(a). A person is "disabled" if "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A person is unable to engage in substantial gainful activity,

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated under the Act establish a five-step process for determining whether a claimant is disabled for purposes of SSI and DIB. 20 C.F.R. § 404.1520.[4] First, the ALJ determines whether the claimant has shown he or she is not currently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), (b); *see Bowen v. Yuckert*, 482 U.S. 137, 140

---

[4] Regulations for DIB and SSI are virtually identical. For the purposes of this appeal, further citations will only be made to the DIB regulations regarding disability evaluation, 20 C.F.R. § 404.1501, *et seq.* The parallel SSI benefits regulations are found under 20 C.F.R. § 416.901, *et seq.*

(1987). If a claimant is presently engaged in any form of substantial gainful activity, he or she is automatically denied disability benefits. *Id.* Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his or her physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii), (c); *see Bowen*, 482 U.S. at 140–41. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1522(b). These activities include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
>
> (2) Capacities for seeing, hearing, and speaking;
>
> (3) Understanding, carrying out, and remembering simple instructions;
>
> (4) Use of judgment;
>
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
>
> (6) Dealing with changes in a routine work setting.

*Id.* A claimant who does not have a severe impairment is not considered disabled. 20 C.F.R. § 404.1520(c); *see Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).

Third, if a claimant's impairment(s) is found to be severe, the ALJ then determines whether the impairment(s) meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Impairment List"). 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates his or her impairment(s) is equal in severity to, or meets, one of the impairments on the Impairment List, the claimant has satisfied his or her burden of proof and is automatically entitled to benefits. *See* 20 C.F.R. § 404.1520(d); *see also Bowen*, 482 U.S. at 141. If the specific impairment is not listed, the ALJ will consider in his or her decision the impairment that most closely satisfies those listed for purposes of deciding whether the impairment is medically equivalent. *See* 20 C.F.R. §

6

404.1526. If there is more than one impairment, then the ALJ must consider whether the combination of impairments is equal to any listed impairment. *Id.* An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar. *Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992).

If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he or she retains the RFC to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(e), (f); *Bowen*, 482 U.S. at 141. Step four involves three sub-steps:

> (1) the ALJ must make specific findings of fact as to the claimant's [RFC]; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the [RFC] to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work.

*Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 (3d Cir. 2000) (citations omitted). When determining RFC, an ALJ's consideration of medical opinion evidence is subject to the framework articulated at 20 C.F.R. § 404.1527 (for claims filed before March 27, 2017) or 20 C.F.R. § 404.1520c (for claims filed after March 27, 2017).

Claimants are not disabled if their RFC allows them to perform their past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), (f). However, if the claimant's RFC prevents him or her from doing so, or if the claimant has no past relevant work, an ALJ proceeds to the fifth and final step of the process. 20 C.F.R. § 404.1520(a)(4)(g). The final step requires the ALJ to "show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and [RFC]." *Plummer*, 186 F.3d at 428; 20 C.F.R. § 404.1520(a)(4)(v). In doing so, "[t]he ALJ must analyze

the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled." *Plummer*, 186 F.3d at 428; 20 C.F.R. § 404.1523. Notably, an ALJ typically seeks the assistance of a vocational expert at this final step. *Plummer*, 186 F.3d at 428.

The claimant bears the burden of proof for steps one, two, and four. *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000). Neither side bears the burden of proof for step three "[b]ecause step three involves a conclusive presumption based on the listings[.]" *Id.* at 263 n.2; *see Bowen*, 482 U.S. at 146 n.5. An ALJ bears the burden of proof for step five. *Sykes*, 228 F.3d at 263.

On appeal, the harmless error doctrine[5] requires a plaintiff to show, as to the first four steps: (1) an error occurred; and (2) but for that error, they might have proven their disability. *Holloman v. Comm'r of Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016). In other words, when reviewing an appeal based on the first four steps, a court considers whether the plaintiff articulated a basis for a decision in their favor based on the existing record. If the plaintiff cannot, it is unlikely they will meet their burden of showing an error was harmful. *See, e.g.*, *Lippincott v. Comm'r of Soc. Sec.*, 982 F. Supp. 2d 358, 380–81 (D.N.J. 2013) (finding ALJ's error harmless); *Powers v. Comm'r of Soc. Sec.*, Civ. A. No. 19-21970, 2021 WL 1207793, at *7 (D.N.J. Mar. 31, 2021) (finding the plaintiff had not demonstrated she was prejudiced by the ALJ's decision and had not shown an error occurred amounting to harm).

---

[5] Harmless error review, which requires the appellant to demonstrate harm, applies to administrative appeals. Holloman, 639 F. App'x at 814. The Supreme Court explained its operation in a similar procedural context in *Shinseki v. Sanders*, 556 U.S. 396, 407–11 (2009), which concerned the review of a governmental agency determination. The Supreme Court stated: "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Id.* at 409. In such a case, "the claimant has the 'burden' of showing that an error was harmful[.]" *Id.* at 410.

The court's review of legal issues within this appeal is plenary. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). Factual findings are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes*, 228 F.3d at 262. Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). Substantial evidence also "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation and internal quotation marks omitted). When substantial evidence exists to support the Commissioner's factual findings, this Court must abide by those determinations. *See id.* (citing *Schaudeck*, 181 F.3d at 431); 42 U.S.C. § 405(g).

## IV. DECISION

Plaintiff appeals ALJ Allard and the Commissioner's decision and requests the Court either reverse the decision because substantial evidence exists in the administrative record to support a finding of disability, or, in the alternative, vacate the decision and remand for reconsideration in light of numerous alleged deficiencies in the hearing decision. (ECF No. 1 at 3.) Plaintiff argues the decision failed to "adequately, reasonably or neutrally assess [P]laintiff's 4 acknowledged mental illnesses at the step 3 medical equivalence stage or in the announcement of the mental RFC." (*Id.* at 5.) Plaintiff claims he is "presumptively disabled under the mental listings at step 3 by meeting the paragraph B and C criteria." (*Id.*) Given his challenge of the mental RFC, Plaintiff is also disputing ALJ Allard's conclusions in step four. Plaintiff is seeking the payment of benefits, but if that is not granted, he requests remand because "meaningful judicial review [was] frustrated at both the step 3 and RFC levels" and "a [more] comprehensible set of findings linking the actual psychological evidence to those findings" should be provided. (*Id.*)

In response, the Commissioner argues ALJ Allard's decision is adequately explained and

supported by substantial evidence because she included Plaintiff's reports and documented medical records, such as consultative notes, as part of the evidentiary basis of her analysis. (ECF No. 15 at 9.) The Commissioner states, "Plaintiff's disagreement with level of severity the ALJ assigned each of h[is] mental impairments is not a basis for reversal or remand in this case" and cites to the holding in *Monsour Medical Center v. Heckler* that a court cannot re-weigh the evidence but must affirm if the Commissioner's decision is supported by substantial evidence. (*Id.* at 11(citing 806 F.2d 1185, 1190–91 (3d Cir. 1986)).) With regards to step four, the Commissioner claims ALJ Allard "properly reviewed the evidence of record in formulating Plaintiff's RFC" and "supported her RFC findings with citations to the record evidence." (ECF No. 15 at 13, 15.) The Commissioner argues that although Plaintiff has attempted to claim an opposite determination is possible due to potentially conflicting information or cherry-picked statements, ALJ Allard "provided valid reasons pursuant to controlling agency regulations and supported by substantial evidence to explain why [opposite] opinions were unpersuasive." (*Id.* at 15.) The Commissioner cites to *Malloy v. Commissioner of Social Security* as further supporting this position. (*Id* at 20(citing 306 F. App'x 761, 764 (3d Cir. 2009) ("The presence of evidence in the record that supports a contrary conclusion does not undermine the [ALJ's] decision so long as the record provides substantial support for that decision.")).)

The Court first addresses Plaintiff's challenge to ALJ Allard's determination under step three and then under step four with regards to the RFC.

### A. Plaintiff's Challenge to ALJ Allard's Step Three Determination

Plaintiff's overarching argument is that ALJ Allard erred in the step three determination because she failed to consider four separate psychiatric impairments according to the rubric and criteria established in the listings themselves. (ECF No. 9 at 5.) Plaintiff argues the decision's

rationale is deficient because it "makes no definitive reference to any medical/psychiatric evidence, relies entirely on [P]laintiff's self-description of his regular activities in a required form filed in conjunction with his disability application, cherry-picks only certain statements from that form" and fails to "articulate how the stated factors comply with the criteria set forth for the ALJ's consideration or bridges [P]laintiff's statements to the 'moderate' conclusion." (*Id.* at 12–13.)

The Commissioner argues ALJ Allard's step three determination was backed up by substantial evidence and properly "concluded that Plaintiff's impairments did not meet or medically equal the criteria of any of the Listings." (ECF No. 15 at 11.) The Commissioner states the "Plaintiff did not meet his burden at step three of the sequential evaluation process" and that the "disagreement with level of severity the ALK assigned each of [his] mental impairments is not a basis for reversal or remand in this case." (*Id.* at 13, 16.)

During step three, the ALJ compares the medical evidence of a claimant's impairments with those listed in the Impairment List, which are presumed severe enough to preclude any gainful work. *See Holley v. Colvin*, 975 F. Supp. 2d 467, 476 (D.N.J. 2013), *aff'd sub nom.*, 590 F. App'x 167 (3d Cir. 2014). The listings articulated in the Impairment List are "descriptions of various physical and mental illnesses and abnormalities, most of which are categorized by the body system they affect." *Sullivan v. Zebley*, 493 U.S. 521, 529–30 (1990). All impairments are "defined in terms of several specific medical signs, symptoms, or laboratory test results." *Id.* at 530. "If a claimant's impairment meets or equals one of the listed impairments, he will be found disabled under the [Act]. If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to step four." *Holley*, 975 F. Supp. 2d at 476. To be found disabled, claimants "must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan*, 493 U.S. at 531.

11

Listings may be satisfied by a claimant meeting the criteria in both paragraphs A and B, or both paragraphs A and C. 20 C.F.R. pt. 404, Subpart P, App'x 1, § 12.00(A)(2). Here, the relevant listings are Listings 12.02 (neurocognitive disorders), 12.04 (depressive, bipolar, and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), 12.08 (personality and impulse-control disorders), and 12.15 (trauma- and stressor-related disorders). (*See* Tr. at 20.) Listing 12.08 has requirements listed in paragraphs A and B, and Listings 12.02, 12.04, 12.06, and 12.15 have requirements listed in paragraphs A, B, and C. 20 C.F.R. pt. 404, Subpart P, App'x 1, § 12.00(A)(2). The paragraph B criteria for Listings 12.02, 12.04, 12.06, and 12.15 are the same and require claimants to show their mental disorder "result[s] in 'extreme' limitation of one, or 'marked' limitation of two, of the four areas of mental functioning." *Id.* § 12.00(A)(2)(b). The four "areas of mental functioning a person uses in a work setting" are: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. *Id.* Additionally, the paragraph C criteria for Listings 12.02, 12.04, 12.06, and 12.15 are the same and require claimants to demonstrate their mental disorder is "'serious and persistent'; that is, there must be a medically documented history of the existence of the disorder over a period of at least 2 years, and evidence that satisfies the criteria in both C1 and C2." *Id.* § 12.00(A)(2)(c). The criteria in C1 and C2 are as follows:

> b. The criterion in C1 is satisfied when the evidence shows that you rely, on an ongoing basis, upon medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s), to diminish the symptoms and signs of your mental disorder (*see* 12.00D). We consider that you receive ongoing medical treatment when the medical evidence establishes that you obtain medical treatment with a frequency consistent with accepted medical practice for the type of treatment or evaluation required for your medical condition. . . .

> c. The criterion in C2 is satisfied when the evidence shows that, despite your diminished symptoms and signs, you have achieved

> only marginal adjustment. "Marginal adjustment" means that your adaptation to the requirements of daily life is fragile; that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life. We will consider that you have achieved only marginal adjustment when the evidence shows that changes or increased demands have led to exacerbation of your symptoms and signs and to deterioration in your functioning; for example, you have become unable to function outside of your home or a more restrictive setting, without substantial psychosocial supports[.] . . .

*Id.* § 12.00(G)(2). "For a claimant to show his [or her] impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Jones*, 364 at 504 (quoting *Sullivan*, 493 U.S. at 530).

ALJs are not required "to use particular language or adhere to a particular format in conducting [their] analysis." *Id.* at 505. Rather, they must "ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." *Id.* ALJs' decisions are read as a whole to determine whether they "considered the appropriate factors in reaching the conclusion that [the claimant] did not meet the requirements for any listing." *Id.* ALJs satisfy this standard by "clearly evaluating the available medical evidence in the record and then setting forth that evaluation in an opinion, even where [they] did not identify or analyze the most relevant Listing." *Scatorchia v. Comm'r of Soc. Sec.*, 137 F. App'x 468, 470–71 (3d Cir. 2005).

To conclude an applicant is not disabled under the step three analysis, the ALJ must "set forth the reasons for [her] decision." *Burnett*, 220 F.3d at 119. Conclusory statements have been found to be "beyond meaningful judicial review." *Id.* In *Burnett*, the Third Circuit vacated the ALJ's decision and remanded the matter because the ALJ made "only a conclusory statement without mentioning any specific listed impairments or explaining his reasoning" which the court found was "beyond meaningful judicial review." *Id.* at 119–20. Although "conclusory statements" that an impairment does not meet a certain listing are insufficient, courts have held an ALJ's

reasoning to be sufficient when the ALJ's analysis considers the specific medical requirements of the listing(s) and the relevant medical evidence in evaluating whether the claimant has met the requirements for that listing(s). *See Parrotta v. Kijakazi*, Civ. A. No. 21-13602, 2022 WL 2289554, at *9–11 (D.N.J. June 24, 2022). An ALJ's decision at step three need not address every single piece of medical evidence in the record. *See Jose L. v. Comm'r of Soc. Sec.*, Civ. A. No. 20-09749, 2022 WL 603001, at *5 (D.N.J. Mar. 1, 2022). ALJs are entitled to focus on the evidence they deem most probative; "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record." *Frederick F. v. Comm'r of Soc. Sec.*, Civ. A. No. 20-11500, 2022 WL 445538, at *2 (D.N.J. Feb. 14, 2022) (alteration in original) (quoting *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004)).

Here, the Court finds substantial evidence supports ALJ Allard's step three determination because she made specific findings and cited to specific evidence in finding the severity of Plaintiff's mental impairments, both individually and in combination, did not satisfy the paragraph B criteria for Listing 12.08 or the paragraphs B and C criteria for Listings 12.02, 12.04, 12.06, and 12.15. ALJ Allard first considered whether Plaintiff met the "paragraph B" criteria for the relevant listings and explained:

> The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.02, 12.04, 12.06, 12.08, and 12.15. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in one extreme limitation or two marked limitations in a broad area of functioning. An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.
>
> In understanding, remembering, or applying information, the claimant has a moderate limitation. [Plaintiff] reported difficulty

with memory, as well as understanding and following instructions (Ex. 4E at 6). [Plaintiff] did not report associated problems with cooking, household chores, following TV shows, or managing his money (Ex. 4E). Consultative examiner reports note deficits in memory, while treatment do not reflect observed persistent deficits in memory. In light of the foregoing, the undersigned finds the claimant has no more than a moderate limitation in understanding, remembering, or applying information.

In interacting with others, the claimant has a moderate limitation. [Plaintiff] reported no difficulty getting along with others, but reported he was fired for problems interacting with his boss (Ex. 4E at 6). [Plaintiff] reported socializing several times a week, but experiencing frequent panic attacks (Ex. 4E). Treatment notes indicate [Plaintiff] is cooperative with medical staff and do not indicate abnormal behavior. In light of the foregoing, the undersigned finds the claimant has no more than a moderate limitation in interacting with others.

With regard to concentrating, persisting, or maintaining pace, the claimant has a moderate limitation. [Plaintiff] reported difficulty with concentration and completing tasks (Ex. 4E at 6). He did not report difficulty with focusing on TV shows, household chores, or building model cars (Ex. 10F). Consultative examiner reports note deficits in concentration while treatment notes do not reflect observed deficits in focus. Based on all of the foregoing, the undersigned finds that the claimant has a moderate limitation in his ability to concentrate, persist or maintain pace.

As for adapting or managing oneself, the claimant has a moderate limitation. [Plaintiff] reported problems handling stress and changes in routine (Ex. 4E at 7). However, treatment notes reflect that [Plaintiff] is generally appropriately dressed and groomed for appointments, cooperative with medical staff, and compliant with prescribed treatment. [Plaintiff] reported he can perform personal care, do household chores, prepare meals, shop for groceries, and manage his finances (Ex. 4E; 5F; 8F; 10F). Based on the foregoing, the undersigned finds the claimant has no more than a moderate limitation in his ability to adapt or manage himself.

Because the claimant's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria are not satisfied.

(ECF No. 5 at 20–21.)

ALJ Allard similarly considered whether the "paragraph C" criteria were satisfied for the relevant listings and stated:

> The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. The record does not establish that the claimant has only marginal adjustment, that is, a minimal capacity to adapt to changes in the claimant's environment or to demands that are not already part of the claimant's daily life. For example, the claimant reported he can perform personal care, do household chores, prepare meals, shop for groceries, and manage his finances (Exs. 4E; 5F; 8F; 10F). The record does not contain evidence or allegations regarding a need for a highly structured setting nor does it establish that the claimant has a minimal capacity to adapt to changes.

(*Id.* at 21.)

Because ALJ Allard found Plaintiff failed to satisfy the criteria of the relevant listings at step three, she continued the analysis process and assessed Plaintiff's RFC during the relevant period. *(Id.* at 22–28.) Although ALJ Allard could have provided more pincites, precision, and explanation in the step three analysis as is demonstrated by her more fulsome RFC determination in step four, this Court is still able to conduct a meaningful review and conclude there is substantial evidence that all limitations were "limited" at best.  *See Jones*, 364 F.3d at 505 ("[T]he ALJ's decision, read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that [the plaintiff] did not meet the requirements for any listing. . . ."); (ECF No. 5 at 82–85, 101–04, 119–20, 129–30, 139–40, 149–51, 328–335, 632–49,  646–50.). ALJ Allard went through the appropriate requirements in her step three analysis and her decision in step four, *infra*, also provides ample evidence that she relied upon the entire record in making all determinations.

Accordingly, this Court must affirm the ALJ, instead of reevaluating the evidence or substituting in its own judgment. *See Chandler*, 667 F.3d at 359 (holding that reviewing courts

"are not permitted to reweigh the evidence or impose their own factual determinations"); *see also Malloy*, 306 F. App'x at 764.

### B.   Plaintiff's Challenge to ALJ Allard's Step Four RFC Determination

Plaintiff argues "the mental RFC is not based on substantial evidence and arrives without a comprehensible rationale for its extremely convenient conclusions." (ECF No. 9 at 34.) Plaintiff contends the RFC determination does not consider his mental limitations appropriately, in particular by not sufficiently incorporating the "moderate limitations" previously determined in step three. (*Id.* at 43–46.) As such, Plaintiff states there is not substantial evidence for the RFC determination nor an adequate explanation for how his limitations allow for him to perform the specified jobs. (*Id.* 45–46.)

The Commissioner argues substantial evidence supports the ALJ's mental RFC determination and that she "reasonably found that Plaintiff could understand and execute simple and routine tasks." (ECF No. 15 at 17.) The Commissioner states "[a]lthough Plaintiff attempts to discredit the rationale of the ALJ's September 26, 2022, decision, he retains the burden of proving that his condition is disabling." (*Id.* at 18.) The Commissioner contends Plaintiff's argument should be dismissed because "Plaintiff had failed to prove that he had additional functional limitations not accounted for in the RFC" and "the record demonstrates that Plaintiff's mental impairments were not disabling." (*Id.*)

After evaluating all the evidence in the record, ALJ Allard determined Plaintiff has the RFC "to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he is limited to standing or walking four hours in an eight hour workday," but with certain non-exertional limitations—namely, that Plaintiff (1) "can understand and execute simple and routine tasks," (2) "can make simple decisions and adapt to occasional changes in essential work tasks," and (3) "can

have occasional contact with coworkers, supervisors, and the public, but not with tasks that involve direct customer service." (*Id.* at 22.) ALJ Allard's process in determining Plaintiff's RFC was twofold: first, she considered whether there was an underlying medically determinable physical or mental impairment that could reasonably be expected to produce Plaintiff's claimed symptoms; and second, she evaluated the intensity, persistence, and limiting effects of Plaintiff's symptoms to determine whether, and the extent to which, they limit Plaintiff's work-related activities, based upon objective medical evidence and other evidence available in the record, as well as opinion evidence in accordance with the requirements of 20 CFR 404.1520c, 404.1529, 416.920c, and SSR 16-3p. (*Id.*)

ALJ Allard considered all the evidence in the record—including Plaintiff's testimony, Plaintiff's medical records, prior administrative medical findings, the opinions of Plaintiff's treating and examining/consulting physicians, a vocational expert's testimony, and Plaintiff's function report—and concluded Plaintiff was not disabled within the meaning of the Act. (*Id.* at 19–28.) ALJ Allard found Plaintiff's "[m]edical records are not consistent with the degree of functional limitation alleged," but "[w]ith regard to mental impairments, records reflect deficits in mood, irritability, poor insight and judgment, and impaired memory and concentration (*See* Exs. 2F at 7; 4F at 27; 5F; 11F at 9)." (*Id.* at 25.)

In reaching her conclusion, ALJ Allard appropriately weighed the opinions of the medical experts and examining/consulting physicians. Focusing on the challenged mental aspects of the RFC determination, the relevant step four analysis is supported by substantial evidence and the various disabilities and related limitations were appropriately considered. For example, ALJ Allard found the opinion of state agency consultants Melanie Callender and Mercedes DeCubas unpersuasive since it was "not consistent with the medical record." (*Id.* at 26.) She stated "[t]heir

review of the evidence noted no current psychiatric treatment, a history of substance abuse, and below average cognitive functioning, generally supporting a limitation to simple work," while making sure to adequately note "records reflect deficits in mood, irritability, poor insight and judgment, and impaired memory and concentration, warranting additional limitations (*See* Exs. 2F at 7; 4F at 27; 5F; 11F at 9)." (*Id.*)

Directly relevant to Plaintiff's challenge, ALJ Allard recites and weighs medical determinations she utilized that are specific to mental functioning and the step four conclusion:

> Consultative examiner Nadine Gardner Psy.D., opined in December of 2019 that the claimant has a mild to moderate impairment in understanding, remembering, and carrying out simple directions, moderate impairment in complex directions, moderate impairments in sustaining attention and concentration, working at a reasonable pace, maintaining appropriate social interaction with supervisors, coworkers, and the public and reacting appropriately to normal work pressure (Ex. 8F at 7). The undersigned finds limitations to simple tasks and on interacting with others persuasive, as they are supported by the medical record. Her examination noted the claimant was cooperative and well groomed, with poor insight and judgment, made errors with basic calculations, and could not perform serial sevens or threes, supporting her opinion (Ex. 8F). Medical records reflect deficits in mood, irritability, poor insight and judgment, and impaired memory and concentration, consistent with limitations to simple tasks and on interacting with others (*See* Exs. 2F at 7; 4F at 27; 5F; 11F at 9).
>
> Judy Iturmendi, Psy.D., wrote that the claimant may struggle to function effectively in day to day tasks and various job settings (Ex. 5F at 4). The undersigned finds her opinion unpersuasive, as it is not supported by her examination and does not provide specific work related functional limitations. Her exam noted the claimant was euthymic and anxious, occasionally circumstantial, with logical thought content, mildly impaired recent memory, intact remote memory, seriously impaired attention and concentration, intact social insight and judgment, and limited overall insight and judgment, failing to support the degree of limitation suggested (Ex. 5F). Medical records reflect deficits in mood, irritability, poor insight and judgment, and impaired memory and concentration, more consistent with limitations to simple tasks and limited interactions with others (*See* Exs. 2F at 7; 4F at 27; 5F; 11F at 9).

(*Id.* at 26.) Based on the above analysis from the decision, vocational expert testimony, and the administrative record, it is clear to this Court that the four areas of mental functioning a person uses in a work setting were appropriately considered. In other words, the decision provides a "clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

The Court finds ALJ Allard adequately determined Plaintiff's RFC, and her decision appropriately considered Plaintiff's mental disabilities and related limitations. ALJ Allard considered all medical evidence in the record, weighed each as she found appropriate, and explained how and why she arrived at her decision. She considered and incorporated into her reasoning and analysis Plaintiff's testimony, Plaintiff's treatment history, Plaintiff's available medical records, and the opinions and findings of Plaintiff's treating and examining/consulting physicians, which are consistent with her decision. Plaintiff's disagreement with ALJ Allard's conclusion does not compel reversal here, as ALJ Allard's decision is based on "more than a mere scintilla of evidence." *Newell*, 347 F.3d at 545. To the extent ALJ Allard did not explicitly consider specific details of certain reports, this is not reversible error, as her decision only needs to be supported by substantial evidence. *See Jose L.*, 2022 WL 603001, at *5; *Frederick F.*, 2022 WL 445538, at *2 (citation omitted).

Moreover, contrary to Plaintiff's claim that there must be a "more detailed assessment of mental functioning" explicit in the RFC determination, not every aspect considered in the analysis must be listed out. It is sufficient for the RFC determination to be supported by "substantial evidence" in the entire record, and it is unnecessary for the ALJ to engage in an explicit "function-by-function" analysis where the reasoning for the decision is implicit in the record. *Malcolm v. Comm'r of Soc. Sec.*, Civ. A. No. 16-8646, 2017 WL 5951703, at *19 n.14 (D.N.J. Nov. 30,

2017) (finding that "the Third Circuit does not require strict adherence to the function-by-function analysis set forth in Social Security Ruling 96–8p"); *Donna R. v. Kijakazi*, Civ. A. No. 20-15449, 2022 WL 13009149, at *12 (D.N.J. Oct. 21, 2022) ("Although the ALJ did not expressly weigh Dr. Brown's opinions at step four, the ALJ's discussion at step two demonstrates that he implicitly discounted that examiner's opinions when assessing Plaintiff's limitations in her ability to understand, remember, or apply information and to concentrate, persist, or maintain pace."); *Sheppard v. Comm'r of Soc. Sec.*, Civ. A. No. 19-18206, 2020 WL 5652450, at *5 (D.N.J. Sept. 23, 2020) ("Here, the RFC did not specifically reference the four non-exertional functions, but that does not mean the ALJ did not consider those functions, singularly or in combination with Plaintiff's other limitations from her various impairments."); *Glass v. Comm'r of Soc. Sec.*, Civ. A. No. 18-15279, 2019 WL 5617508, at *8 (D.N.J. Oct. 31, 2019) ("Contrary to Plaintiff's assertion otherwise, the . . . Third Circuit does not require an ALJ to perform a 'function-by-function' analysis at step four, so long as the ALJ's RFC determination is supported by substantial evidence in the record.").

Accordingly, the Court affirms ALJ Allard's determination in step four of the five-step evaluation process.

## V. CONCLUSION

For the reasons set forth above, the Court finds Plaintiff failed to show ALJ Allard erred in determining Plaintiff was not entitled to SSI and/or DIB benefits under the Act. Therefore, the Commissioner's decision is **AFFIRMED**. An appropriate Order follows.

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

**Dated:** March 19, 2025